DOUGLAS CAIAFA, ESQ. (State Bar No. 107747)
DOUGLAS CAIAFA, A Professional Law Corporation
11845 West Olympic Boulevard, Suite 1245
Los Angeles, California 90064
Telephone: (310) 444-5240
Facsimile: (310) 312-8260

Attorneys for Objecting Class Member
Maria D. Merlan

# UNITED STATES DISTRICT COURT

## IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARABELLA LEMUS, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>H&R BLOCK TAX AND BUSINESS SERVICES, INC., a Delaware corporation; H&R BLOCK ENTERPRISES, INC., a Missouri corporation; H&R BLOCK TAX SERVICES, INC., a Missouri corporation; H&R BLOCK SERVICES, INC., a Missouri corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. CV-09-03179 SI<br><br>The Honorable Susan Illston BC 389755<br><br>**OBJECTION TO SETTLEMENT BY CLASS MEMBER MARIA D. MERLAN**<br><br>Hearing Date: May 10, 2012<br>Time: 9:00 a.m.<br>Courtroom #10<br>19th Floor |

Class Member MARIA D. MERLAN hereby submits her written Objection to the Class Action Settlement in *Lemus, et al. vs. H&R Block Enterprises, LLC.*

-1-
OBJECTION OF MARIA MERLAN TO CLASS SETTLEMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Maria D. Merlan was employed by H&R Block Enterprises from years 2001 to 2010, as a seasonal, non-exempt tax preparer or "Tax Professional," in Pomona, California on Holt Avenue. As such, she is a member of the proposed class. During the entire time she worked for Defendant, she routinely worked overtime for which she was not paid and, was denied the opportunity to take meal and rest breaks as required by the California Labor Code. Nevertheless, and even though the Operative Fourth Amended Complaint does not contain causes of action for overtime violations and meal and rest break violations, the Notice of Class Settlement, requires Class Members, including Merlan, to release those claims without compensation. In fact, the Fourth Amended Complaint contains only three (3) causes of action, all of which are based on penalties. Merlan and every other Class Member who does not opt-out is being forced to release any and all claims possible, both certified and non-certified, including without limitation, claims for failure to provide meal and rest breaks (§226.7) and failure to pay overtime (§§1194 & 1198). (See Section VII of Notice of Class Action Settlement).

Ms. Merlan received a Notice of Class Action Settlement in this action which included a Claim Form, and, after she reviewed it, she filled in all requested and necessary information; she mailed in the Claim Form in a timely manner by U.S. Mail in an envelope which was provided with the Notice and which did not require postage. After her review of the Notice of Class Action Settlement and the proposed settlement, Ms. Merlan determined that the proposed settlement is not in either her best interests or the interests of the Class for many reasons. Specifically, (1) the amount of Attorneys' Fees requested ($11,666,000) is grossly excessive; (2) the amount to Class Members is insufficient; and (3) the amount of Incentive awards payable to the named Class Representatives ($25,000 each) is also excessive.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

The original complaint was filed in June of 2009 in Superior Court in San Francisco, and contained causes of action for failure to pay overtime wages, failure to provide meal and rest breaks, and other violations of Labor Code and the UCL.

Approximately one and one-half years later, in December of 2010, the Fourth Amended Complaint was filed. The Fourth Amended Complaint eliminated many of the claims contained in the earlier complaints, leaving just claims for (1) Failure to Provide Accurate Wage Statements (§226); (2) Failure To Pay Wages Upon Termination of Employment (§203); and (3) Civil Penalties under the Private Attorney General Act ("PAGA")(§2698). Despite that fact, the Release contained in the Notice of Class Settlement releases all claims, including claims no longer contained in the Fourth Amended Complaint, including claims for meal and rest breaks violations (§226.7) and failure to pay overtime (§§1194 & 1198).

The Class Action Settlement described in the Notice (1) forces Class Members who do not opt-out to release all claims, including those not contained in the Fourth Amended Complaint; (2) Requests $11,666,000 in attorneys' fees and $25,000 per Class Representative in Incentive Awards regardless of how much is paid to the Class, and (3) Requires a Claim Form to be submitted by any Class Member who wants what is described as a "Settlement Share" in the Notice even though the Defendant claims to know the identity of each and every of the 18,000 Class Members and how much they are entitled to receive (See Motion for Attorneys' Fees, p 8). The Claim Form is unnecessary and improperly attempts to lower Defendant's payment to the Class.

## III

## ARGUMENT

1. **The Recovery To Each Class Member or "Settlement Share" Is Inadequate**

During the four years covered by the Settlement and specifically during the years

OBJECTION OF MARIA MERLAN TO CLASS SETTLEMENT

2006 through 2010, Ms. Merlan routinely worked overtime for which she was not compensated and, was denied the opportunity to take her statutorily required meal and rest periods. It is clear from the Release that neither Merlan nor the rest of the class will be compensated for such time.

## 2. The Confusing And Unfair Settlement Formula

### A. Settlement Share To Class Members

Under the Settlement Agreement a *formula* is used to determine the distribution to each Class Member as more particularly set forth in section 5.1.1 of the Settlement Agreement. That formula is essentially:

5.1.1.1.  Each member of the Settlement Class gets 10 tax season points for each tax season worked between 2007 and 2011.

5.1.1.2  Each member gets 20 additional points he/she received "Additional Compensation"

5.1.1.3  Each member's share in the Net Settlement Amount shall be calculated by "**multiplying the Net Settlement Amount by a fraction,** *the numerator* of which is the individual class member's average adjusted hourly compensation for the 2007 through 2011 tax seasons multiplied by the total of that member's total "tax season" points, and *the denominator* of which is the total of all tax season points attributed to all members of the Settlement Class multiplied by the average of the adjusted hourly compensation of all Settlement Class Members for the 2007 through 2011 tax seasons. The resulting number shall be the amount that each member of the Settlement Class is eligible to claim.

Thus, the following fraction *would be multiplied by the Net Settlement Amount* ("NSA") in order to determine each member's share in the Settlement.

$$\frac{\text{Individual Class Member's Comp. (2007-2011) (x) Tax Season Points}}{\text{All Tax Season Points -All Members (x) Comp. All Class Members (2007-2011)}}$$

-4-

OBJECTION OF MARIA MERLAN TO CLASS SETTLEMENT

Since the NSA is defined as the Class Settlement Amount **minus attorneys' fees and costs**, and other costs and payments, other than payments to Claimants; the amount of attorneys' fees awarded directly affects payment to each and every Class Member. For Example, if you assume that Merlan or any other Class Member worked from 2007 to 2010 (4 years) at an hourly wage of $12 and had 120 total tax points (30 per year - maximum points) and also assume that the **full amount of $11,832,000 in fees ($11,666,000) and costs ($166,000) awarded by Court** - then the Settlement Share would be as follows:

Fraction: $\frac{\$12 \times 120 \text{ points}}{*21,600,000} = \frac{\$1,440.00}{21,600,000}$

*($12 x 20,000 employees x 90 tax season points per employee)

Under the Settlement, the fraction $1,440.00 over 21,600,000 must be multiplied by the "Net Settlement Amount." If Fees and Costs and other payments added up to $12 million, the Net Settlement Amount would apparently be $23 million ($35 million minus $12 million in fees and costs, etc). Thus, one would need to multiply $23,000,000 times $\frac{\$1,440.00}{21,600,000}$ in order to arrive at a distribution to the class member of $1,531.80.

If the attorneys fees and costs and other expenses were reduced to $6,000,000 instead of $12,000,000, each Class Member would get significantly more. In the example above, if the fees and costs were reduced to $6 million each Class Member's share would increase from $1,531.80 to $1,931.40, for over a 25% increase. ($35,000,000 - $6,000,000 = $29,000,000)

**B.     $1,500 Hourly Rate To Attorneys**: The Motion for Attorneys Fees filed by Class Counsel states that the Marlin & Saltzman firm spent 6,049.4 hours of attorney time and the Diversity Law Group spent 2,123.8 hours on the case. First of all, this seems highly excessive, especially since the Marlin & Saltzman firm came into the litigation fairly late in the ballgame and took only 18 depositions. Based on $12 million in fees, they're receiving about $666,000 per deposition.

Assuming the legitimacy of the entire 8,172 hours, Class Counsel are seeking

almost $1,500 per hour for their time. It seems unfair that the law firms are asking for $1,500 per hour when the average net claim of each Class Member is $1,200 based on four full years of violations by the Defendant (See, Motion for Attorneys' Fees, p. 13).

### C. Class Counsels' Contention That They Settled For 83% of Maximum Amount Plaintiffs Could Ever Receive Is Unexplained And Confusing

Class Counsels' Motion for Attorneys' Fees claims that the Settlement of $35 million is "83% of Class Counsels' maximum estimate." Merlan would like an explanation of this number and claim. Is it 83% of just the claims in the Fourth Amended Complaint or is it of all of the claims released? How was the number calculated and where is the documentation to support that calculation?

### D. Legal Authority To Reduce Award of Attorneys' Fees

First, the determination of the amount of Attorneys' Fees by the Court should be deferred until the claim process has concluded. With increasing regularity, courts are adjusting attorneys' fees based on the number of claims submitted by the class. For example, a federal district court in Northern California recently expressed the following sentiment:

> To award class counsel the same fee regardless of the claim participation rate, that is, regardless of the enthusiasm of the class for the benefits purportedly negotiated on their behalf, would reduce the incentive in future cases for class counsel to create a settlement which actually addresses the needs of the class.... Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained.

*Yeagley v. Wells Fargo & Co.*, No. C 05-03403 CRB, 2008 WL 171083, at *9 (N.D. Cal. Jan. 18, 2010) (Fair Credit Reporting Act) (1% claims rate).

Similarly, in *Tarlecki v. bebe Stores, Inc.*, cited as No. C 05-1777 MHP, 2009 WL 3720872 (N.D. Cal. Nov. 3, 2009), non-management employees brought a class action against an employer retailer alleging that requirements to purchase and wear the employer's apparel violated the FLSA. *Id.* at *1. The employer settled the action and agreed to pay up to $1,357,654 in cash based on identification of 11,586 class members. *See id.* at *3. The response rate, however, was approximately 18% of the class —

amounting to an actual payment of $231,283 in cash and $105,032.40 in gift cards. *Id.* at *1-*3. Nonetheless, class counsel submitted a fee request based on the full recovery contemplated by the settlement. *Id.* at *3. In reviewing this petition, the court explained that when determining the appropriateness of an attorneys' fees allocation, Ninth Circuit courts often start with a baseline of 25% of the settlement that can be adjusted in either direction in light of the particular facts of a case. *Id.* at *4. Without explaining the basis for applying this "benchmark" to the class' potential recovery, the court found that the low claims rate militated in favor of adjusting the percentage downward since it "denot[ed] that counsel's estimates were unduly optimistic, that class members did not feel they were wronged, or that class members did not value the benefit high enough to warrant filing a claim." *Id.* Ultimately, class counsel was awarded $200,000 in fees. *Id. Cf. Keene v. Coldwater Creek, Inc.*, No. C 07-05324 WHA, 2009 WL 1833992, at *2-*3 (N.D. Cal. June 23, 2009) (class action for meal/rest breaks and unpaid wages; calculating attorneys' fees based on claims made to discourage collusion among counsel where attorney acknowledged low response rate was foreseeable); *see also Create-A-Card, Inc. v. Intuit, Inc.*, No. C 07-06452 WHA, 2009 WL 3073920, at *1, *3 (N.D. Cal. Sept. 22, 2009) (class action predicated on California Business & Professions Code violations; expressing view that "it is unreasonable for class counsel to be compensated for hypothetical recovery that never took place" in non-common fund context).

Here, the same rationale applies. It remains uncertain as to how many Class Members will submit a claim and how much they will be paid. If there is a low percentage of claims, Class Counsels' $11,666,000 in fees could amount to an absurdly huge percentage of the actual payment to the Class, especially since no matter how small the claim percentage, Class Counsels' fees are based on the gross potential Maximum Settlement Amount. If the Class only claims $2 million based on Claim Forms submitted, Class Counsels' Fees will be approximately 600% of what the Class actually receives. There should be a reasonable limitation placed on this fee.

-7-
OBJECTION OF MARIA MERLAN TO CLASS SETTLEMENT

Recently, a district court in the Central District of California, found that use of the lodestar method to calculate attorneys' fees was preferable in a wage and hour settlement, since it "adequately compensate[d]" counsel for actual hours worked, discouraged premature settlements, and reduced threats of collusive activity. *Anderson v. Nextel Retail Stores*, LLC. No. 2:07-cv-0448-SVW-FFM (C.D. Cal. June 30, 2010), Slip Op. at 18. Finding the lodestar adequate and refusing to make upward adjustments, the court noted:

> [c]ounsel's hourly fees are near the upper end of the market rate, particularly for straightforward wage-and-hour litigation; counsel performed adequately, but not exceptionally; counsel has been compensated for the delayed recovery through the court's use of current billing rates; and counsel is receiving a substantial sum of money that fully compensates them for the work they have performed.

Slip Opinion at 19.

Here, counsel should be compensated based on their loadstar without upward adjustment as well. Moreover, and to the extent it is based on a percentage of recovery, that recovery must be based on a percentage of the actual claims made by the Class. (See, *Kakani v. Oracle Corp.* 2007 WL 1793774 (Cal. N.D., June 19, 2007), where a subsequent motion for attorneys fees was eventually granted based on the percentage of the claims actually made and paid out).

## IV.
## CONCLUSION

Based on the above, the Settlement as currently constituted is not fair or reasonable and should be changed accordingly.

DATED: April 16, 2012　　　　　DOUGLAS CAIAFA, A PROF. LAW CORP.

By: _____
Douglas Caiafa, Attorneys for Maria Merlan

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 11845 W. Olympic Blvd., Suite 1245, Los Angeles, CA 90054-5095.

On **April 16, 2012,** I served the foregoing document described as:

**NOTICE OF OBJECTION TO SETTLEMENT BY CLASS MEMBER MARIA D. MERLAN**

on the interested parties in this action by placing

___ the original

_X_ a true copy thereof enclosed in sealed envelopes addressed as follows:

Louis Marlin
Marlin & Saltzman, LLP
3200 El Camino Real, Suite 100
Irvine, CA 92602

H&R Block Enterprises, LLC
C/O Andrew Paley
Seyfarth Shaw LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067

___ (BY OVERNIGHT MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California.

_x_ (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California.

Executed on **April 16, 2012**, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Douglas Caiafa

-9-