**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ARABELLA LEMUS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

H&R BLOCK ENTERPRISES LLC.,

Defendant.
_______________________________________/

No. C 09-3179 SI

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARD**

Now before the Court are plaintiffs' motion for final approval of the class action settlement, plaintiffs' motion for award of attorneys' fees and expenses, and plaintiffs' motion for enhancement awards to the named plaintiffs. The Court has reviewed all of the papers, as well as the objections and the parties' responses thereto. For the following reasons, the Court GRANTS final approval to the settlement and GRANTS IN PART the motions for attorneys' fees and expenses and enhancement awards. Docket Nos. 121, 122 & 143.

## BACKGROUND

### I. Procedural background

On June 9, 2009, plaintiff Arabella Lemus filed this putative class action against H&R Block Enterprises, LLC in San Francisco County Superior Court on behalf of a class of current and former California employees in the positions of Tax Advisor, Tax Professional, and Tax Preparer Assistant. The original complaint alleged claims for (1) violations of Cal. Labor Code § 2802; (2) failure to provide meal periods in violation of Cal. Labor Code § 226.7*;* (3) failure to pay overtime wages; (4)

violation of Cal. Labor Code § 226; (5) violation of Cal. Labor Code § 203; and (6) unfair business practices, in violation of Cal. Bus. & Prof. Code § 17200 *et seq.* The overtime claim alleged in the original complaint, and all subsequent complaints, alleged that defendant failed to properly calculate the regular rate of pay for purposes of calculating the amount of overtime paid because defendant did not include non-discretionary incentive pay when calculating the regular rate of pay. *See* Compl. ¶¶ 46-52 (Docket No. 2, Ex. A); FAC ¶¶ 47-53 (Docket No. 2, Ex. C); SAC ¶¶ 47-53 (Docket No. 18); TAC ¶¶ 50-56 (Docket No. 41, Ex. A).[1]

On July 8, 2009, plaintiff Lemus filed a first amended complaint, adding claims for the alleged failure to pay commission wages, violation of Cal. Bus. & Prof. Code § 16600, and wrongful termination in violation of public policy. The claims under Cal. Bus. & Prof. Code § 16600 and for wrongful termination were brought by Lemus on an individual basis. On July 13, 2009, defendants removed this case to federal court, and the case was ultimately assigned to this Court. Shortly after removal, the parties stipulated to the filing of a second amended complaint.

In 2009, another action was filed in the Central District of California alleging the same or similar claims against defendant, *Delana L. Ugas v. H&R Block Enterprises, LLC*, Case No. CV09-6510 CAS. The parties involved in both cases met and conferred and agreed that certain claims, including the meal period (Cal. Labor Code § 226.7) claim, would be litigated in *Ugas*, with the other claims remaining in this action. As a result of that agreement, the parties stipulated to plaintiffs filing a third amended complaint. The third amended complaint alleged five causes of action: (1) failure to pay all wages due

---

[1] The overtime claim was alleged in the original complaint and the first through third amended complaints. Each of those complaints alleged that class members worked overtime and that "[d]uring their employment with defendants, including during pay periods wherein Plaintiff Lemus and the class worked overtime, Plaintiff Lemus and the class also earned non-discretionary incentive pay (including but not limited to commissions/bonuses). Defendants, as a corporate-wide practice and policy, did not calculate and/or factor such non-discretionary pay into Plaintiff's and class members' regular rate of pay for purposes of calculating revised and increased overtime pay, and as such, owes Plaintiff Lemus and the class additional overtime pay." *See, e.g.*, FAC ¶ 48. None of the complaints alleged that class members worked "off the clock."

Plaintiffs' counsel state that during the course of this litigation, discovery showed that "overtime compensation was correctly calculated by Defendant during our class period. Specifically, once 'end of season' compensation was determined for class members, Defendant adjusted previously paid overtime compensation by including the end of season pay in the calculation, thus raising the overtime paid to class members. The increased amount of overtime pay was paid at the same time the end of season compensation was paid." Lemus Decl. in Response to Merlan Decl. ¶ 3. Accordingly, plaintiffs dropped the overtime claim and did not include that claim in the fourth amended complaint.

in violation of Cal. Labor Code § 204; (2) failure to provide accurate wage statements in violation of Cal. Labor Code § 226; (3) failure to reimburse employees for necessary business expenses in violation of Cal. Labor Code § 2802; (4) failure to pay overtime wages in violation of Cal. Labor Code § 510; and (5) late payment of final wages in violation of Cal. Labor Code §§ 201-202, and resulting penalties pursuant to Cal. Labor Code § 203.

The parties conducted discovery, including plaintiffs' counsel taking approximately 18 depositions of 16 H&R Block employees. On September 24, 2010, plaintiffs filed a motion for class certification. Docket No. 47. After the motion was filed, the parties reached a stipulation whereby (1) plaintiffs filed a fourth amended complaint, which added a second named plaintiff, Malvin Ayala, and alleged only the causes of action which discovery had confirmed to plaintiffs' counsels' satisfaction were factually and legally supported, and (2) defendants agreed to certification of the causes of action alleged in the fourth amended complaint. On November 30, 2010, the Court approved the parties' stipulation and certified a class of "all seasonal, non-exempt Tax Professional employees who were or are employed by defendants during the Class Period in California as tax preparers." The class period was defined as the period from June 9, 2006 through December 31, 2010.[2] The fourth amended complaint alleged claims for (1) failure to pay accurate wage statements in violation of Cal. Labor Code § 226; (2) failure to pay all wages due at time of termination of employment in violation of Cal. Labor Code § 203; and (3) civil penalties under the Private Attorney General Act, Cal. Labor Code § 2698.

On May 18, 2011, the parties filed cross-motions for summary judgment. Docket Nos. 68-77. On May 23, 2011, while the motions were being briefed, the parties attended a one day mediation conducted by Mr. Hunter Hughes. Sett. Agt. § 3.4. That mediation proved unsuccessful. The parties continued to engage in settlement negotiations, and continued the hearing date on the summary judgment several times. *Id*. § 3.5. On July 20, 2011, the parties attended a second full day mediation session with Mr. Anthony Piazza. *Id*. § 3.4. That session was also unsuccessful. After that session, the parties continued settlement negotiations, and on October 7, 2011, the morning of the hearing on the summary judgment motions, the parties informed the Court that they had reached a tentative resolution.

[2] The class period was extended to May 15, 2011. Docket No. 120.

*Id*. § 3.5. The Court continued the hearing on the summary judgment motions, and on January 6, 2012, the parties signed the settlement agreement.

**II. Principal settlement terms**

The principal terms of the settlement are as follows:

- Defendant agrees to pay up to a Maximum Settlement Amount of $35 million. This sum includes payments made to claimants, a $75,000 payment to the California Labor and Workforce Development Agency, settlement administration costs, a $50,000 late claim fund, an award of attorneys' fees and costs, and incentive awards to the named plaintiffs;
- The sum available for use for payments to claimants after the LWDA payment, settlement administration costs, late claimant fund, awards of attorneys' fees and costs, and incentive awards to the named plaintiffs is designated as the Net Settlement Amount;
- Defendant agrees that it shall pay a Minimum Settlement Amount regardless of the claims rate, equal to the amount of attorneys' fees and costs awarded plus 50% of the sum remaining from the Maximum Settlement Amount after deduction of the attorneys' fee and cost award[3];
- Each class member who returns a valid and timely Claim Form will be entitled to receive a portion of the amount of the Net Settlement Amount, allocated based upon a formula set forth in the Settlement Agreement. Under the formula, class members are awarded "tax season points" for each tax season worked. Plaintiffs estimate that the average net claim is approximately $1,200 per class member, but that class members' recoveries will vary based upon the number of tax seasons worked during the class period and whether or not the class members earned "additional compensation" in any given season. Plaintiffs state the alleged failure to make timely payment of "additional compensation" represents the largest claim litigated in this case, as it involved a substantially longer delay in payment than the alleged delay attributable to the payment of the final hourly

[3] Based upon the claims rate of 50.42%, defendant's payments under the settlement will exceed the Minimum Settlement Amount. *See generally* Docket No. 161.

United States District Court
For the Northern District of California

wages; and the settlement agreement takes this into account and awards class members who earned additional compensation in any tax season four times the recovery for that season compared to people who only earned hourly wages; and

- Class members release "any and all claims . . . arising out of the facts alleged in the Litigation, and that were asserted in the Litigation (including claims that were certified and claims that were not certified in the Litigation), with the exception of claims asserted against H&R Block in *Ugas v. H&R Block Enterprises, LLC*, for premium payments under California Labor Code section 226.7 for meal periods that were allegedly not provided and claims under California Business & Professions Code section 17200 et seq. based on the claims for premium payments for meal periods that were allegedly not provided . . . ." Sett. Agt. § 8.1.

According to plaintiffs' papers, there are approximately 18,705 class members. Bui Decl. ¶ 6. As of May 7, 2012, the claims administrator had received 46 requests for exclusion; one of those requests was late, and nine were deficient. *Id.* ¶ 12. The valid and timely requests for exclusion represent 0.17% of the class. *Id.* As of August 14, 2012, 50.42% of the "points" available have been claimed by class members. Supp. Bui Decl. ¶ 7.[4] The claims rate of 50.42% results in the Minimum Settlement Amount being exceeded and thus eliminates the possibility of *cy pres* payments under the settlement.[5] Third Supp. Marlin Decl. ¶ 5.

**DISCUSSION**

Now before the Court is plaintiffs' motion for final approval of the class settlement and objections thereto, plaintiffs' motion for attorneys' fees and expenses, and plaintiffs' motion for an enhancement award for the named plaintiffs. Four objections to the proposed settlement were filed, and

---

[4] The case manager for the settlement states that "[t]he total class represents 951,300 potential points. The valid Claim Forms (including the late claims filed before the late claim cut-off) represents 479,660 points or 50.42% of the total points." Supp. Bui Decl. ¶ 7. Mr. Bui also states that as of August 14, 2012, there are 14 deficient claims pending which represent 440 points, and if those deficiencies are resolved in favor of the claimants, the overall percentage of claimed available points will increase. *Id.* ¶ 8.

[5] Accordingly, the objections to the *cy pres* provision in the settlement agreement are moot.

one of those objections (filed by Jay W. Brandenburg), was later withdrawn.[6]

## I. Objections to proposed settlement

### A. Notice

Mr. Brandenburg filed an objection which, *inter alia*, raised issues with the class notice. Mr. Brandenburg subsequently withdrew his objection. However, because objector Delana Ugas joined in Mr. Brandenburg's objection, the Court addresses the objection regarding notice.[7]

Mr. Brandenburg objected that the notice was misleading because it suggested that the settlement is over and "gives a lay class member little indication that there is anything left to do except make a claim." Brandenburg Objection at 5:1-2. Mr. Brandenburg also objected that the notice is not designed to encourage participation because the notice describes class member benefits in terms of "tax season points" and directs class members to the settlement agreement for an explanation of how benefits will be distributed.

The Court finds that notice was provided in compliance with the settlement agreement, and that notice satisfied due process and Federal Rule of Civil Procedure 23(e). The notice (1) accurately informed class members about the lawsuit and settlement, (2) provided sufficient information so that class members were able to accept the benefits offered, opt out and pursue their own remedies, or object to the proposed settlement, (3) provided procedures for class members to file written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed settlement, and (4) provided the time, date and place of the final fairness hearing. The notice does not suggest that the settlement is finished, and to the contrary informs class members how to participate, to request exclusion, or to object. There is nothing improper about the notice summarizing class member benefits

---

[6] One of the objectors is Maria Merlan. Ms. Merlan filed an objection and a "reply" to her objection. On August 17, 2012, plaintiffs' counsel filed a response to "'Notice of New Authority' Filed by Objector Merlan." Docket Nos. 160 & 161. Plaintiffs' response states that plaintiffs' counsel received in the mail a "Notice of New Authority" that was filed by Merlan but did not yet appear on the court docket. The Notice of New Authority still does not appear on the docket.

[7] Mr. Brandenburg also objected to the requested attorneys' fees and the *cy pres* provision. Other objectors also objected to the attorneys' fees request, and the Court addresses that issue *infra*. The objections to *cy pres* distribution have been mooted based upon the participation rate of class members.

and directing class members to review the settlement agreement for a fuller description of the settlement terms. The Court notes that plaintiffs' counsel negotiated and obtained an agreement that a "no postage necessary" envelope was provided with the notice and claim form, and that approximately mid-point in the claim process, a reminder postcard was sent to class members who had not yet filed a claim.

**B. Scope of release**

Two objectors, Maria Merlan and Delana Ugas, assert that the release in the proposed settlement is too broad. They assert that class members will be forced to release "any and all claims possible, both certified and non-certified, including without limitation claims for failure to provide meal and rest breaks (§ 226.7) and failure to pay overtime (§§ 1194 & 1198)." Merlan Objection at 2:14-17. Relatedly, Merlan and Ugas assert that the settlement is inadequate because it does not compensate class members for the overtime and meal and rest break claims.

The Court finds these objections unfounded. The release is limited to claims based on facts and claims alleged in this case, and thus it is not as broad as the objectors contend. The overtime claim released in this action is predicated upon the allegation that defendant incorrectly calculated the class members' regular rate of pay, not that defendant failed to pay overtime. Thus, the release does not release claims that class members worked overtime for which they were not paid, as is alleged in *Ugas v. H&R Block Enterprises* pending in the Central District. In addition, the release explicitly carves out the meal break claim that was originally alleged in this case and that is currently being litigated in *Ugas v. H&R Block Enterprises* pending in the Central District. Finally, no rest break claim has ever been alleged in this case.

Ms. Ugas also objects that the settlement violates the Fair Labor Standards Act because "class members who do not file valid and timely claims will release their FLSA claims against Defendant, in violation of federal law." Ugas' Objection at 18:28-19:2. The Court finds that this objection lacks merit, as the settlement provides that the released claims are only those that were alleged in this litigation. Plaintiffs have never alleged an FLSA claim in this case.

United States District Court
For the Northern District of California

**C. Treatment of settlement monies as 1099 payments**

One objector, Andrea Connell, objects to the portion of the proposed settlement providing that monies received will be characterized as 1099 payments. Ms. Connell states that the monies to be paid are for "wage based claims," such as failure to pay overtime wages and failure to make final wage payments upon termination. However, as plaintiffs explain in their response to the objection, the fourth amended complaint makes clear that the gravamen of this case is plaintiffs' claim that defendant violated Labor Code Sections 201 and 202 by failing to pay final wages immediately upon an employee's termination. A violation of these sections results in a penalty, *see* Cal. Labor Code § 203, and penalties are not wages and are not subject to employer or employee withholding. Similarly, plaintiffs sought penalties under Labor Code Section 226 based on their claim that end of season compensation should have been disclosed throughout each tax season on bi-weekly paychecks.

**D. Settlement formula and structure**

Ms. Ugas and Ms. Merlan object that the settlement is a claims-made settlement, with unclaimed funds reverting to defendant. They contend that there is no need for class members to file claims because the parties can identify the class members, determine when they worked, the average hours they worked, and the last day that they received their final paychecks. They assert that there is no need for a "claims-made process consisting of complicated formulas and confusing mathematical calculations." Ugas Objection at 17:10-11.

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*,150 F.3d 1011, 1025 (9th Cir. 1998). The Court has examined these factors and concludes that the settlement is fair, adequate and reasonable. The settlement was reached after considerable discovery and after thorough and voluminous briefing on the cross-motions for summary judgment. *See* Docket Nos. 68-87, 89-92 (summary judgment briefing). As a result of those motions, the parties and the Court were acutely aware of the weaknesses in the claims and defenses, and the

settlement represents a fair compromise. The settlement formula, which is based upon "tax season points," accounts for differences among class members in connection with rates of pay and compensation levels, as well as whether or not a class member received only hourly wages at the end of a tax season, or both hourly wages and "end of season" compensation. While, in general, claims-made settlements with reversions to the defendants are disfavored, here a significant portion of the class participated in the settlement, and the average class member recovery is at least $1,200.[8] The positive reaction of class members to the proposed settlement also supports final approval.

Pursuant to *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011), the Court has also examined the settlement for collusion and finds that the settlement appears to be the product of serious, informed, non-collusive negotiations. Contrary to the assertions of the Ugas and Merlan objectors, the settlement was reached well after class certification, not in conjunction with certification.[9] The objectors also assert that the parties colluded because they reached a full settlement the morning of the summary judgment hearing. However, the record in this case shows that the parties reached a tentative settlement on that morning only after extensive settlement negotiations (including two mediations), and that the parties then required several additional months to finalize the settlement details. Accordingly, the Court finds the settlement appropriate for final approval under Federal Rule of Civil Procedure 23(e).

## II. Incentive payments

Plaintiffs' counsel also seeks incentive payments of $25,000 each for the two named plaintiffs. The Ugas and Merlan objectors contend that this payment is too high when compared to the average recovery received by each class member. The Ninth Circuit has cautioned that where there is a "very large differential in the amount of damage awards between the named and unnamed class members," that differential must be justified by the record. *Staton*, 327 F.3d at 978. Named plaintiffs are eligible

---

[8] Plaintiffs' counsel estimated an average class member recovery of $1,200 based upon, *inter alia*, a fee award of $11,666,000 and named plaintiff enhancement awards of $50,000 total. The average class member recovery will be higher than $1,200 because the Court is awarding plaintiffs' counsel $3,983,134, and the Court has awarded the two named plaintiffs $15,000 each as incentive awards.

[9] The class period was extended as part of the settlement.

**United States District Court**
For the Northern District of California

for reasonable incentive payments, and "[t]he district court must evaluate their awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Id*. at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir.1998)); *see generally Staton*, 327 F.3d at 977 (discussing cases).

Here, the two named plaintiffs have submitted declarations describing their involvement in this litigation. Plaintiff Lemus, who filed this case in 2009, states in her declaration that she estimates that she has spent more than 75 hours on this case assisting plaintiffs' counsel, preparing for and having her deposition taken, reviewing and responding to discovery requests, and speaking to class members. Lemus Decl. ¶¶ 4-11. Plaintiff Ayala, who joined this case after it was filed, submitted a similar declaration. Mr. Ayala estimates he has spent more than 60 hours on the same tasks. Ayala Decl. ¶¶ 4-10. Both named plaintiffs are releasing their individual claims, and are waiving meal and rest period claims that are not released by the class. The Court finds that a $15,000 incentive award for each named plaintiff is consistent with the case law, and is fair and reasonable in light of the time and effort spent by the named plaintiffs in litigating this action and in exchange for releasing and waiving certain non-class claims.

**III. Attorneys' fees and costs**

Plaintiffs' counsel seek $11,666,000 in fees and $152,063.50 in costs. Plaintiffs' counsel arrive at the $11,666,000 figure based upon their assertion that the settlement creates a $35 million "common fund," and that counsel is entitled to receive one-third of that common fund in fees. However, it is incorrect to view the Maximum Settlement Amount of $35 million as creating a $35 million common fund because the monies unclaimed by class members revert to defendant, and thus the total amount of the fund is less than $35 million. Indeed, based upon a claims rate of 50.42%, calculations performed by plaintiffs' counsel show that if the Court awarded the total amount of fees sought (and $50,000 in enhancement awards), defendant's total payout would be $23,650.177, and the requested $11,666,000 fee award would constitute 49.33% of the total "fund." *See* Docket No. 161-2.

Plaintiffs' counsel have submitted declarations describing the time spent by each firm on this litigation. Counsel have also filed a "Time & Task Chart" showing how their time was spent in this case. The combined lodestar of plaintiffs' counsel is $3,983,134. "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1295-96 (9th Cir. 1994)). The Court finds it appropriate to award counsel their lodestar rather than the $11,666,000 sought. Awarding counsel the requested fees would result in counsel receiving slightly more than the funds that would be distributed to the class, a result that the Court finds inequitable.[10] In contrast, awarding plaintiffs' counsel their lodestar fully compensates counsel for their time spent litigating this case and results in a fee award that is approximately 20% of the total settlement fund.[11] A 20% recovery is within the "usual range" in common fund cases in the Ninth Circuit. *See Vizcaino*, 290 F.3d at 1047. The Court also awards plaintiffs' counsel their costs in the amount of $152,063.50.

**CONCLUSION**

1. Based on the foregoing, the Court GRANTS plaintiffs' motion for final approval of the settlement. The parties are directed to consummate the Settlement Agreement in accordance with its terms.

2. The Court GRANTS IN PART plaintiffs' motion for enhancement awards to the representative plaintiffs, and holds that each named plaintiff shall receive $15,000 as an incentive award.

3. The Court GRANTS IN PART plaintiffs' motion for attorneys' fees and costs. Plaintiffs'

---

[10] As provided in the settlement agreement, the Net Settlement Amount is arrived at by deducting the following from $35 million: (1) $75,000 LWDA payment, (2) $30,000 in incentive payments, (3) approximately $115,000 in notice and administration costs, (4) $50,000 late claim fund, (5) $152,063.50 in costs, and (6) attorneys' fees. If the fees are $11,666,000, the Net Settlement Amount is approximately $22,911,936.50, of which 50.42%, or approximately $11,552,198.38, would be distributed to the class.

[11] By awarding the lodestar figure of $3,983.13, the Net Settlement Amount is $30,594,802.50, with 50.42%, or approximately $15,445,899.42, distributed to the class. Based upon these figures, defendant pays a total of approximately $19,831,096.92, and the fee award of $3,983,134.13 is approximately 20% of the total amount paid by defendant to fund the settlement.

counsel shall be paid $3,983,134 in fees and $152,063.50 for costs.

4. The allocation plan is hereby APPROVED as fair, adequate, and reasonable. The class settlement amount, class representative incentive awards, and attorneys' fees and costs shall be distributed in accordance with the terms of the Settlement Agreement, this Order, and any further orders of this Court.

5. This litigation is DISMISSED WITH PREJUDICE and without costs to any party, other than as specified in the Settlement Agreement and this order.

6. In consideration of the Class Settlement Amount, and for other good and valuable consideration, all settlement class members who did not properly request exclusion are deemed to have released and discharged the Releasees (as that term is defined in the Agreement) from all Released Claims as set forth in Section 8 of the Settlement Agreement, and are barred and permanently enjoined from asserting, instituting, or prosecuting, either directly or indirectly, the Released Claims. As documented by the record in this case, the Released Claims do not include (1) claims that class members worked overtime for which they were not paid, (2) the meal break claim that was originally alleged in this case and that is currently being litigated in *Ugas v. H&R Block Enterprises* pending in the Central District, and (3) claims for denials of rest breaks.

7. Without affecting the finality of the Judgment in this case, this Court retains jurisdiction over (a) implementation of the Settlement and the terms of the Settlement Agreement; (b) distribution of the Class Settlement Amount, the Class Representative Incentive Awards, and the Attorneys' Fees and Costs Amount; and (c) all other proceedings related to the implementation, interpretation, administration, consummation, and enforcement of the terms of the Settlement Agreement and/or the Settlement, and the administration of Claims by Settlement Class Members.

///

///

///

United States District Court
For the Northern District of California

8. In the event that the Settlement Effective Date does not occur, the Judgment shall be rendered null and void and shall be vacated, *nunc pro tunc*, except insofar as expressly provided to the contrary in the Settlement Agreement, and without prejudice to the status quo ante rights of plaintiffs, class members, and defendant.

**IT IS SO ORDERED.**

Dated: August 22, 2012

SUSAN ILLSTON
United States District Judge